NOT DESIGNATED FOR PUBLICATION

No. 117,848

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACOB MICHAEL MARTIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed June 15, 2018. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: Jacob Michael Martin appeals the district court's order of restitution, contending the amount is unsupported by the evidence. We affirm.

*Factual and procedural background*

Martin stole Brittani Jenson's golf clubs from a van, then pleaded guilty to burglary of a vehicle and theft. The district court sentenced him to probation with an

1

underlying sentence of five months' imprisonment and held a hearing to determine the amount of restitution.

Heather Jenson, Brittani's mother, testified at that restitution hearing. She explained that at the time of the theft, Brittani was a high school student pursuing a golf scholarship for college. On the day that Martin stole the items from the van, Brittani was scheduled to play in a tournament that college recruiters would attend the next day. So on the day Heather learned of the theft, she bought Brittani a new set of golf clubs, which cost $2,709.31, and a golf bag, which cost $189.85.

Heather was able to buy the same golf bag as the one Martin had stolen, but could not find the same golf clubs. Brittani's stolen driver was a Callaway Ghost that had cost around $400. But because that driver was out of production, Heather bought the driver that had replaced it. Heather was unsure of the brand of the other golf clubs but she tried to get clubs much like those Brittani had been using. Brittani used the new clubs and bag in the tournament the next day.

A few days later, the police contacted Heather to tell her that they had located the stolen clubs at a pawn shop in Olathe. Heather drove to the pawn shop, paid $80 to recover the stolen items, and returned them to Brittani who resumed using them. Heather could not return the new clubs to the store because they had been used. So Heather stored the new clubs and bag in her garage where they remained until the restitution hearing.

The district court ordered Martin to pay $2,979.16 in restitution. That amount included the cost of the new clubs, the cost of the new bag, and the cost paid to the pawn shop to recover the original clubs and bag. The district court also ordered the replacement clubs and bag to be turned over to Martin once he paid full restitution. Martin appeals, arguing solely that the district court's restitution order exceeded the amount of actual loss caused by his crime.

2

Our standard of review in restitution cases is clear:

> "Questions concerning the 'amount of restitution and the manner in which it is made to the aggrieved party' are reviewed under an abuse of discretion standard. A district court's factual finding relating to the causal link between the crime committed and the victim's loss will be affirmed if those findings are supported by substantial competent evidence. Finally, appellate courts have unlimited review over legal questions involving the interpretation of the underlying statutes. [Citations omitted.]" *State v. King*, 288 Kan. 333, 354-55, 204 P.3d 585 (2009).

*Analysis*

A court can order a criminal defendant "to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 2017 Supp. 21-6604(b)(1). Similarly, as a condition of probation, the district court can order the defendant to "make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime." K.S.A. 2017 Supp. 21-6607(c)(2).

Martin argues that the district court abused its discretion by awarding Heather the replacement cost of the golf clubs as opposed to their fair market value. For property crimes, Kansas courts have routinely measured the amount of restitution by the fair market value of the property. *State v. Hall*, 45 Kan. App. 2d 290, 301, 247 P.3d 1050 (2011), *aff'd* 297 Kan. 709, 304 P.3d 677 (2013). Only when the trial court could not easily determine the fair market value did we permit it to "consider other factors including the purchase price, condition, age, and replacement cost of the property." *State v. Phillips*, 45 Kan. App. 2d 788, 795, 253 P.3d 372 (2011). We thus applied the rule that "an award of restitution that exceeds the fair market value of an item constitutes an abuse

3

of discretion." *Hall*, 45 Kan. App. 2d at 302. See *State v. Rhodes*, 31 Kan. App. 2d 1040, 1042-43, 77 P.3d 502 (2003) (reversing an order of restitution because it was based on replacement value rather than fair market value); *State v. Hinckley*, 13 Kan. App. 2d 417, 419-20, 777 P.2d 857 (1989) (vacating a restitution order and remanding for a second restitution hearing because the district court ordered defendant to pay the replacement value of the stolen property less 15 percent rather than the fair market value). Martin's argument would have won the day a few years ago.

But the Kansas Supreme Court corrected us in *State v. Hand*, 297 Kan. 734, 737-38, 304 P.3d 1234 (2013), and *Hall*, 297 Kan. at 712, which rejected reliance on bright-line rules. *Hand* found no error by the district court's failure to rely on the fair market value of the property stolen:

>"Kansas courts have consistently held 'fair market value' to be the usual standard for calculating 'loss or damage' for purposes of restitution. *State v. Chambers*, 36 Kan. App. 2d 228, 242, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006); *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 (1996). But, as we explain in *State v. Hall*, the concept of fair market value as the one and only starting place oversimplifies. See *State v. Hall*, [297 Kan. 709, 304 P.3d 677 (2013),] (for purposes of calculating restitution owed for stolen inventory, neither retail price nor wholesale automatic benchmark for valuation). Although fair market value may be an accurate measure of loss in some cases, it may not be the best measure for all cases. See *Chambers*, 36 Kan. App. 2d 228 (no discernible market value for used personal lingerie stolen from victim's home); see also *State v. Maloney*, 36 Kan. App. 2d 711, 714-15, 143 P.3d 417, *rev. denied* 282 Kan. 794 (2006) (if property lacks calculable fair market value, restitution amount may be based on other factors); *State v. Rhodes*, 31 Kan. App. 2d 1040, 77 P.3d 502 (2003) (same).

>"Here, it is undisputed that the district judge did not explicitly consider the fair market value of the stolen television when fashioning a restitution award. But the governing statutory language did not require the judge to award only fair market value as restitution in a theft case. K.S.A. 21-4610(d). Nor did it require the judge to consider the fair market value of the property lost before considering other factors. K.S.A. 21-4610(d).

4

Indeed, we have recognized that restitution can include costs in addition to and other than fair market value. *State v. Allen*, 260 Kan. 107, 115-16, 917 P.2d 848 (1996). The critical element is the causal connection between the crime and the loss. *Allen*, 260 Kan. at 115-16. And the appropriate measure of restitution to be ordered is the amount that reimburses the victim for the actual loss suffered." *Hand*, 297 Kan. at 737-38 (finding no error by including the amount of the victim's increased insurance cost in the restitution amount).

Similarly, in *Hall*, 297 Kan. 709, Syl. ¶ 1, the Supreme Court rejected a bright-line rule. It held, instead, that the statutory language requires the sentencing judge to evaluate the evidence, weigh all factors, and consider the facts and circumstances of each case to determine a value that will compensate the victim for the actual loss caused by the defendant's crime. 297 Kan. at 712-15. There, the court was asked to determine whether retail cost or wholesale cost was the appropriate measure of loss for determining restitution for stolen inventory. But it expressly rejected any notion that the restitution statute provides a hard and fast measure for setting the value of the loss:

"On its face, the restitution statute does not require a sentencing judge to rely on wholesale cost rather than retail value in fashioning a restitution award in a theft case such as this. To the extent the Court of Appeals' opinion holds otherwise, it grafts requirements onto the statute that are unsupported by its language, and it impermissibly curtails the discretion liberally granted by our legislature. We hereby reject any notion that the statute provides a hard and fast measure for setting the value of the loss. The question at the heart of this appeal cannot be resolved as a matter of law. Determining the value of an aggrieved party's loss raises an issue of fact." 297 Kan. at 712.

That case found the concept of fair market value to be a sticky wicket, unpredictable in practice:

"In property crime cases, Kansas courts have consistently held 'fair market value' to be the usual standard for calculating 'loss or damage' for purposes of restitution.

5

*Chambers*, 36 Kan. App. 2d at 242; *State v. Baxter*, 34 Kan. App. 2d 364, Syl. ¶ 2, 118 P.3d 1291 (2005). The fair market value of inventory is the price that a willing seller and a willing buyer would agree upon in an arm's length-transaction. *Baxter*, 34 Kan. App. 2d 364, Syl. ¶ 2. But the concept of fair market value is a sticky wicket, unpredictable in practice because it is entirely relative, depending on who is doing the buying and who is doing the selling. See *State v. Behrendt*, 47 Kan. App. 2d 396, 402, 274 P.3d 704 (2012), *petition for rev. filed* May 10, 2012 (exemplifying potential for confusion as to party appropriately identified as buyer and seller for purposes of determining fair market value). The rigid adherence to 'fair market value' oversimplifies. While the phrase may capture the best measure of loss in some cases, it may not in all. See *State v. Chambers*, 36 Kan. App. 2d 228, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006) (no discernible market value for used personal lingerie stolen from victim's home); see also *State v. Maloney*, 36 Kan. App. 2d 711, 714-15, 143 P.3d 417, *rev. denied* 282 Kan. 794 (2006) (if property lacks calculable fair market value, restitution amount may be based on other factors); *State v. Rhodes*, 31 Kan. App. 2d 1040, 77 P.3d 502 (2003) (same)." *Hall*, 297 Kan. at 713.

The sentencing judge thus need not award only the fair market value as restitution in property crime cases. Nor must a sentencing judge consider the fair market value of the property lost before considering other factors. And restitution can include costs in addition to and other than fair market value, particularly when, as here, no evidence of the fair market value of the property is presented to the district court. Thus, we have recently found no error when the district court uses replacement cost rather than fair market value to determine the amount of restitution owed. See *State v. Bowen*, No. 116,296, 2017 WL 4558555, at *4-5 (Kan. App. 2017) (unpublished opinion); *State v. Mannion*, No. 111,970, 2015 WL 3514042 (Kan. App. 2015) (unpublished opinion).

The appropriate amount of restitution here is the amount that compensates the Jensons for the actual damage or loss caused by Martin's burglary and theft. And the most accurate measure of that loss depends on the evidence before the district court. No one presented evidence of fair market value, so the district court used a measure of loss

6

including replacement cost that compensated the victim under the facts here. Heather's testimony constitutes substantial evidence that she incurred $2,979.16 to replace the stolen clubs and bag and to repurchase the original stolen clubs and bag after they were found. She had to replace the clubs swiftly and she chose clubs comparable to those Martin had stolen. Martin does not challenge the requisite causal connection. We find the district court's determination of restitution is based on reliable evidence that yields a defensible restitution figure. No windfall to the victim occurs because Martin will become the owner of the replacement golf clubs and bag once he pays for them. The district judge exercised the full measure of his discretion under the law and all the evidence before him in fashioning a creative, yet appropriate, award. We find no abuse of discretion.

Affirmed.