No. 119,356

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON RYAN SMITH,
*Appellant*.


SYLLABUS BY THE COURT

1.

Any restitution ordered in a criminal case must be based on the damage or loss caused by the crime. Restitution depends upon the establishment of a causal link between the defendant's crime and the victim's damages.


2.

The damage or loss caused by the defendant's crime shall include the cost of repair or replacement of the property that was damaged.


Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed May 24, 2019. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and STUTZMAN, S.J.


1

HILL, J.: Aaron Ryan Smith pled no contest to two counts of possession of stolen property. In his plea agreement, Smith agreed to pay "all verifiable restitution." He appeals the amount of restitution ordered by the district court.

The court found Smith guilty of possessing a motorcycle stolen from Andrew Rodvelt and a scooter stolen from John Miller in violation of K.S.A. 2015 Supp. 21-5801 (theft). We look first at the motorcycle and then the scooter.

Police located Rodvelt's motorcycle and returned it. The motorcycle had been damaged and Rodvelt had a repair shop estimate the cost of repairs. The estimate for repairs was $1,365.77. The repairs included replacing the back rest, replacing the ignition switch, and painting the fuel tank. Rodvelt testified that these repairs were not needed before his motorcycle was stolen. The district court credited Rodvelt's uncontroverted testimony regarding the amount that it would cost to return the motorcycle to the condition it was in before it was stolen. The court ordered restitution in the amount of $1,365.77.

The scooter was a different situation. Miller bought his scooter in April 2015 for $2,141.93 and it was stolen in November 2015. His scooter was never returned. After receiving notice that Smith had been charged with possession of his stolen property, Miller called the Highway Patrol. The patrol officer told him the scooter was towed by Kitch Towing. Miller then got in touch with Kitch and it told him the scooter had been sold. After demanding proof that Kitch had attempted to contact him before selling it, Kitch then told Miller that the scooter had been stolen. At sentencing, the district court commented that Smith, the Highway Patrol, and Kitch "ought to all maybe talk about how they're going to share the loss," but it found that the misconduct of other parties did not diminish the loss that Miller suffered and ordered $2,141.93 in restitution. In other words, the court ordered Smith to pay the actual cost of the scooter as restitution.

*We repeat the law that guides us.*

The law gives clear directions concerning restitution. Restitution "shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 2018 Supp. 21-6604(b)(1).

For our purposes, appellate review of an order directing a criminal defendant to pay restitution can involve three standards of review. If the issue concerns the amount of restitution and the manner in which it is made to the aggrieved party it is reviewed under the abuse of discretion standard. The trial court's factual findings of the causal link between the crime committed and the victim's loss will be affirmed if these findings are supported by substantial competent evidence. Finally, appellate court review of legal questions involving the interpretation of any underlying statutes is subject to our unlimited review. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016).

*Sufficient evidence described the condition of the stolen motorcycle.*

Smith argues the State produced insufficient evidence of the condition of Rodvelt's motorcycle before it was stolen.

Here, Rodvelt specifically testified the repairs listed on the estimate were not needed before the motorcycle was stolen. He was not sure what the "'detachable chrome side plates'" listed on the estimate were. But he speculated they were part of the back rest. The district court found Rodvelt's testimony regarding the condition of his motorcycle before and after the accident credible, calling it "uncontroverted." The court did not expect Rodvelt to remember every particular item of the motorcycle that needed to be repaired. As an appellate court, we do not reweigh such credibility determinations. See

3

*State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). The district court's findings were supported by substantial competent evidence. We will not alter those findings.

*There is a direct causal link between Smith's crime and the loss of the scooter.*

Smith argues on appeal, as he did before the district court, that there was an insufficient causal link between his crime and the loss suffered by Miller because of the actions of law enforcement and Kitch.

Our statute, K.S.A. 2018 Supp. 21-6604(b)(1) requires that any restitution ordered in a criminal case must be based on "damage or loss caused by" the crime. Thus, restitution depends upon the establishment of a causal link between the defendant's crime and the victim's damages. *State v. Alcala*, 301 Kan. 832, 837, 348 P.3d 570 (2015). But the statute's reference to damage or loss caused by the crime is not modified by the adverb "directly." *State v. Hand*, 297 Kan. 734, 739, 304 P.3d 1234 (2013).

The causal link between a defendant's crime and the restitution damages must satisfy the elements of proximate cause: cause-in-fact and legal cause. Causation-in-fact requires proof that it is more likely than not that, but for the defendant's conduct, the result would not have occurred. Legal causation limits the defendant's liability even when his or her conduct was the cause-in-fact of a result because it must be foreseeable that the defendant's conduct might have created a risk of harm, and the result of that conduct and any contributing causes were foreseeable. Causation may be based on a chain of events. But if so, an intervening cause may absolve the defendant of liability unless the intervening cause is foreseen or might reasonably have been foreseen by the defendant. *State v. Arnett*, 307 Kan. 648, 654-55, 413 P.3d 787 (2018).

In *Arnett*, the court considered whether a defendant convicted of conspiracy to commit burglary for lending her car to her codefendants could be ordered to pay

4

restitution for damages caused by the codefendants during their subsequent burglaries and thefts. The district court ordered the restitution requested by the State, holding Arnett jointly and severally liable with her codefendants for the full amount. The district court concluded that, *but for Arnett's crime*, the subsequent crimes which resulted in the damages would not have occurred and the resulting damages were a foreseeable result of Arnett's action. A panel of our court concluded that Arnett could not be liable for the restitution because her crime of conviction did not have a direct causal link to the damages. But our Supreme Court reversed, leaving the district court's factual determination on causation in place. 307 Kan. at 656.

The issue here was whether the intervening actions of the Highway Patrol and Kitch absolved Smith of liability for the loss of the scooter. At the restitution hearing, Smith argued, "if the proper steps would have been taken [by the Highway Patrol and Kitch Towing], [Miller] could have gotten his [scooter] back in the same condition as it was when it was taken from him." The district court ruled that the misconduct of third parties did not diminish the loss suffered by Miller and he could make a civil claim if he believed the others (who were not before the court) should share in the payment of the restitution amount. Thus, in a similar way that civil codefendants can be jointly and severally responsible for paying the entire restitution amount, the court here simply held Smith responsible for the full amount of restitution because he was the only responsible party that was before the court.

The district court's approach to this problem is reasonable. Rather than show that his crime of conviction did not cause Miller's loss, Smith's argument merely showed that third parties could have minimized the loss. After all, Smith was convicted of "obtaining control over stolen property or services knowing the property or services to have been stolen by another" with "intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services." See K.S.A. 2015 Supp. 21-5801(a)(4). Because Smith had the intent to permanently deprive Miller of possession, use, or benefit

5

of his scooter, it was foreseeable to Smith that Miller would not ever see his scooter again. Similar to the holding in *Arnett*, "but for Smith's crime," Miller's scooter would not have been seized by the Highway Patrol or towed by Kitch. Just as the Supreme Court held in *Arnett*, we will leave the district court's factual determination of causation in place.

*It was not an abuse of discretion to order Smith pay the replacement cost of the scooter.*

Smith also argues that Miller should have been awarded the fair market value of the scooter rather than the replacement cost.

In property crimes, Kansas courts have consistently found that "fair market value" should be used as the typical standard for calculating "loss or damage" for purposes of restitution. The fair market value of property is the price that a willing seller and a willing buyer would agree upon in an arm's length-transaction. But the restitution statute does not restrict a trial judge to award only the fair market value as restitution; restitution may include costs in addition to and other than fair market value. The appropriate amount is that amount which compensates the victim for the actual damage or loss caused by the defendant's crime. *State v. Hall*, 297 Kan. 709, 713-14, 304 P.3d 677 (2013). Thus, in several recent cases our court has found no error when the district court ordered a defendant to pay the replacement cost of property rather than fair market value as restitution. See, e.g., *State v. Martin*, No. 117,848, 2018 WL 2994342, at *3 (Kan. App.) (unpublished opinion), *rev. denied* December 31, 2018.

The statute supports the court's ruling. In July 2015, the Legislature added language to K.S.A. 21-6604(b)(1) stating that, with respect to theft crimes, "such damage or loss shall include the cost of repair or replacement of the property that was damaged." Clearly, then, the court was legally permitted to order replacement costs as restitution.

6

Here, there was no testimony concerning the fair market value of the scooter immediately before it was stolen. Miller bought the scooter for $2,141.93 only seven months before it was stolen. At the restitution hearing, Miller was asked if he knew whether the scooter had been damaged after it was stolen. Miller testified that on one occasion Kitch told him that the scooter was worth $800 and another time he was told $200. But besides that being an unreliable estimate, the scooter was never returned to Miller. At the restitution hearing, Smith agreed that Miller's loss exceeded $2,100. Instead, he argued that it was the fault of law enforcement and Kitch that Miller did not get the scooter back. Therefore, the only ascertainable amount the court could award was the replacement cost. The district court's decision is reasonable.

Affirmed.